**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

KELLY ANN G.,

                              Plaintiff,

         v.

                                                    No. 5:20-CV-1013
COMMISSIONER OF SOCIAL SECURITY,                    (CFH)


                              Defendant.

─────────────────────────────────

**APPEARANCES:**                    **OF COUNSEL:**

Olinsky Law Group                   HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration      LOUIS JOHN GEORGE, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

        Kelly Ann G.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

───────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

("Compl."). Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 17. The Commissioner opposes the motion. See Dkt. No. 20. For the following reasons, the Commissioner's decision is affirmed.

# I. Background

On July 29, 2016, plaintiff filed a Title II application for disability insurance benefits. See T. at 60.[3] Plaintiff alleged a disability onset date of March 10, 2016. See id. at 174. The Social Security Administration ("SSA") denied plaintiff's claim on September 29, 2016. See id. at 71-74. Plaintiff requested a hearing, see id. at 77, and a hearing was held on August 5, 2019, before Administrative Law Judge ("ALJ") Laureen Penn. See id. at 34-59. On August 14, 2019, the ALJ issued an unfavorable decision. See id. at 10-23. On June 29, 2020, the Appeals Council denied plaintiff's request for review. See id. at 1-5. Plaintiff commenced this action on August 31, 2020. See Compl.

# II. Legal Standards

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 14. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since March 10, 2016, her alleged onset date.  See T. at 12.  At step two, the ALJ found that plaintiff had the following severe impairments: "mood disorder, adjustment disorder with anxiety and depressed mood, major depressive disorder, degenerative disc disease and degeneration of intervertebral disc of mid-cervical region[.]"  Id.  At step three, the ALJ

determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13.  The ALJ considered Listings 12.04 for depressive, bipolar, and related disorders; and 12.06 for anxiety and obsessive-compulsive disorders.[4]  See id. at 14.  The ALJ found that plaintiff had "only moderate limitation[s]" in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  Id. at 14-15.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) except

> [she] can lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for six hours, and sit for six hours.  The claimant can frequently stoop, crouch, kneel, and crawl, occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  The claimant can frequently reach overhead with the right upper extremity. The claimant is limited to simple, routine, repetitive work with occasional workplace changes.  The claimant can occasionally interact with supervisors, co-workers, and the public.

T. at 16.  At step four, the ALJ determined that plaintiff was unable to perform relevant past work.  See id. at 21.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since March 10, 2016, through the date of this decision[.]"  Id. at 22.

---

[4] The ALJ also considered Listing 1.04 for plaintiff's spine disorder.  T. at 13-14.  However, plaintiff challenges the ALJ's conclusions only as they relate to her mental health disorders.  See Dkt. No. 17.

## A. ALJ's Review of the Relevant Medical Evidence

The ALJ gave "limited weight" to the opinion of Laura Sullivan, LMSW.  See T. at 20.  The ALJ recounted Ms. Sullivan's medical source statement where she opined that plaintiff "was able to satisfactorily understand, remember, and carry out simple instructions, make simple work-related decisions, respond to changes, and maintain socially appropriate behavior[.]"  Id. (citing id. at 480).  The ALJ summarized Ms. Sullivan's remaining opinions that plaintiff

> had serious limitations or was unable to meet competitive standards in areas such as accepting criticism, interacting with the public, dealing with work stress, maintaining regular attendance, or completing a normal workday or work week, she would be off-task more than 20% of the time and would miss more than four days a month[.]

Id. (citing id. at 480).  The ALJ found that Ms. Sullivan's opined limitations "regarding [plaintiff's] ability to follow simple instructions, respond to changes, make decisions, and maintain behavior are generally consistent with the other evidence in the record[;] [however,] . . . the more extreme limitations . . . are unsupported and inconsistent with the evidence in the record."  Id.  The ALJ discounted Ms. Sullivan's "extreme limitations" because: (1) her opinion "was provided approximately two weeks after the claimant began treatment . . ."; (2) they "are highly inconsistent with her own, normal mental status examination of the claimant at her intake examination, and . . . with the other normal examination evidence in the record, including the claimant's consultative examination"; (3) ". . . it appears these limitations are based entirely on the claimant's own subjective reports"; and (4) they "are . . . inconsistent with her large gap in treatment records[.]"  Id.  The ALJ explained that the "record shows a significant gap in treatment [after April 2017], [] as the claimant did not begin treatment at Bright Path

7

Counseling Center until more than two years later, in June 2019 . . . [and] this significant gap in treatment throughout much of the period at issue at issue is highly inconsistent with the claimant's allegations of total disability during this time." Id. at 19 (citing id. at 601). The ALJ also explained that despite plaintiff's reports of paranoia, anger, and trouble getting along with others, her "mental status examination was normal, including that the claimant had a normal mood and affect, her memory was intact, her attention span and concentration were normal, and her insight, judgment, and impulse control were intact[.]" Id. (citing id. at 601-602).

The ALJ gave "some weight" to the opinion of consultative examiner Jeanne Shapiro, Ph.D.  T. at 19.  The ALJ recounted Dr. Shapiro's opinion that plaintiff "had no limitations [in] understanding, following, or carrying out simple or complex tasks, sustaining attention and concentration, or attending to a routine and maintaining a schedule[.]" Id.  Further, according to the ALJ, Dr. Shapiro found that plaintiff "had no more than mild limitation[s] learning new tasks, making appropriate decisions, relating and interacting with others, or dealing with stress," and Dr. Shapiro "add[ed] that [plainitff's] symptoms did not appear to be significant enough to interfere with her ability to function on a daily basis[.]" Id. at 19-20 (citing id. at 413-17).  The ALJ determined that Dr. Shapiro's opinion was "broadly consistent with her normal examination of the claimant . . . as well as consistent with the grossly normal findings on objective examination elsewhere in the record, despite the claimant's limited, conservative, and sporadic treatment throughout the period at issue." Id. at 20.

The ALJ gave "little weight to the statement provided by Joy Commisso, M.D. on

July 12, 2019[.]"  T. at 20 (citing id. at 593).  Dr. Commisso stated, "[b]ased on the limited time I have spent with [plaintiff] (under 30 minutes total for the above diagnoses [of anxiety and depression]), I am unsure if she is fit for the workforce or not."  Id. at 593.  The ALJ explained that "this statement is of minimal probative value in determining the claimant's residual functional capacity."  Id. at 20.  The ALJ did not specifically mention Roxanne L. Hill, Ph.D., but cited from her treatment record.  See id. at 18-20.  For example, the ALJ explained that in July 2016, plaintiff reported managing her household and taking care of her children, and that plaintiff's Global Assessment of Functioning score indicated generally mild-to-moderate symptoms.  See id. at 18, 20 (citing id. at 345, 386, 402).  Similarly, the ALJ did not name Nicole Pitzer, P.A., as one of plaintiff's providers but referenced her treatment record, stating that in October 2016, although plaintiff "felt she was unable to work, a mental status examination noted the claimant's mood was normal and her affect was appropriate[.]"  Id. at 19 (citing id. at 583-84).  This record also noted plaintiff's allegation that "her mood still 'goes hostile' depending on the day or what is going on[,]" and "she started hearing voices a month ago."  Id. at 583.

The ALJ also referenced follow-up visits with other providers wherein plaintiff "reported her medications were working well, endorsing only occasional symptoms of depression . . . [and] although [she] reported daily auditory hallucinations, she added that she was not seeing a psychiatrist, and a mental status examination found no apparent anxiety, depression, or agitation, with no evidence of internal stimuli[.]"  T. at 19 (citing id. at 580-81).  Then, "[a]t a follow-up in April 2017 [plaintiff] reported increased anxiety after a recent witnessed trauma, [but] a mental status examination

was . . . normal, . . . [without] any apparent anxiety, depression, or agitation, she had appropriate insight and judgment, her affect was appropriate to her mood, and there was no evidence of delusions, hallucinations, or other abnormal thought content." Id. (citing id. at 574-75).

## IV. Arguments[5]

Plaintiff argues that "[t]he ALJ's determination is unsupported by substantial evidence as [s]he failed to properly weigh the opinion evidence provided by Laura Sullivan, LMSW.  Additionally, the rationales the ALJ provided for discounting the opinion were insufficient."  Dkt. No. 17 at 10.  Plaintiff argues that Ms. Sullivan's 2019 opinion should have been afforded greater weight because she opined greater limitations than Dr. Shapiro's 2016 consultative examination, indicating a deterioration in plaintiff's mental health.  See id. at 12.  Additionally, plaintiff argues that it was appropriate for Ms. Sullivan to rely on plaintiff's subjective complaints, and that her opinion is supported by her own treatment notes and findings from Dr. Hill, PA Pitzer, and Dr. Commisso.  See id. at 12-15.  As to the gap in plaintiff's treatment record, she asserts that plaintiff "may have lacked the appropriate rationality to have chosen to continue her treatment."  Id. at 15.  Finally, plaintiff argues that the ALJ erred because the vocational expert's ("VE") testimony indicated that if Ms. Sullivan's opined limitations had been accepted, there would be no work available to plaintiff.  See id. at 16-17.

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

The Commissioner argues that Ms. Sullivan is not an acceptable medical source; therefore, the ALJ was not required to give her opinion special weight.  See Dkt. No. 20 at 7.  The Commissioner also contends that the ALJ's explicit justifications for discounting Ms. Sullivan's limitations sufficiently consider her opinion and those reasons are supported by substantial evidence.  See id. at 6-15.

## V. Discussion

"Under the Regulations, a treating [source's medical] opinion is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record.'"  Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).  "'[M]edical opinions' are defined as 'statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis, prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions.'"  Leonard W. v. Saul, No. 5:18-CV-00993 (DNH/CFH), 2020 WL 896904, at *4 (N.D.N.Y. Feb. 25, 2020), report and recommendation adopted, 2020 WL 1169400 (N.D.N.Y. Mar. 11, 2020) (alterations in original) (quoting 20 C.F.R. § 404.1527(a)(1)).  "Acceptable medical sources" include licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.  20 C.F.R. § 404.1513(a)(1)-(5) (effective Sept. 3, 2013 to Mar. 26, 2017).  Additionally, "an ALJ is entitled to rely upon the opinions of both examining and nonexamining State

agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).  "The opinions of consultative examiners . . . may constitute substantial evidence where[] . . . [they are] supported by the medical evidence in the record." Frawley v. Colvin, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014).

"The regulations note that, '[i]n addition to evidence from acceptable medical sources [the Commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work.'" Leonard W., 2020 WL 896904, at *4 (alterations in original) (quoting 20 C.F.R. § 404.1513(d)).  "Opinions from medical sources that are not considered acceptable medical sources are important and should be evaluated on key issues such as impairment severity and functional effects." Saxon, 781 F. Supp. 2d at 103 (citations and internal quotation marks omitted).  "Social workers are defined as 'other sources'." Id.; see Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006).  "In weighing the opinions of 'other sources', the ALJ must use the same factors for the evaluation of the opinions from 'acceptable medical sources' enumerated in 20 C.F.R. 404.1527(d)." Saxon, 781 F. Supp. 2d at 104 (citing Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)).  "The ALJ is free to conclude that the opinion of a licensed social worker is not entitled to any weight, [but], the ALJ must explain that decision." Id.

"The ALJ [i]s not required to mention or discuss every single piece of evidence in the record." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005); see Mongeur, 722 F.2d at 1040; Berry, 675 F.2d at 469.  "Where the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  Id. at 79 (citations and internal quotation marks omitted) (alterations in original).  The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted) (explaining that the ALJ "fully considered" an opinion where he "considered the consistency of the opinion with the medical evidence . . ., describing that the opinion appears to recite the claimant's subjective statements . . ., generally relying on [the] [p]laintiff's subjective allegations for [the] assessment of work-related limitations[]" and "her clinical signs at the evaluation were not consistent with other clinical examinations[.]").  An ALJ may not reject a medical opinion solely because it relies on a plaintiff's subjective complaints.  See Tomczak v. Comm'r of Soc. Sec., No. 18-CV-64 (FPG), 2019 WL 2059679, at *1 (W.D.N.Y. May 9, 2019); see also Showers v. Colvin, No. 3:13-CV-1147 (GLS), 2015 WL 1383819, at *8, n.18 (N.D.N.Y. Mar. 25, 2015) ("[I]t is legally flawed" for the ALJ to discount medical "diagnoses of additional mental impairments because they 'were based solely upon the claimant's subjective reports.'").

13

This "Court [has] note[d] that [i]t is specifically the province of the ALJ . . . to choose between properly submitted medical opinions." Jennifer Lee W. v. Berryhill, No. 5:18-CV-64 (DJS), 2019 WL 1243759, at *6 (N.D.N.Y. Mar. 18, 2019) (citations and internal quotation marks omitted).  An ALJ's determination does not "require[] reversal" where "the ALJ's decision specifically recites the very same findings from those providers that [the] [p]laintiff highlights in her arguments to the Court[]" and the ALJ chooses to credit certain medical opinions "more than others" "after providing a detailed explanation of his analysis of the entire medical record[.]" Id.  Moreover, "[i]nconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion." Alpeter v. Comm'r of Soc. Sec., No. 5:16-CV-1117 (GTS), 2017 WL 4443978, at *5 (N.D.N.Y. Oct. 4, 2017).

### A. Application

The ALJ afforded Ms. Sullivan's opinion less weight, in part, because the extreme limitations were inconsistent with her own treatment record, Dr. Shapiro's findings, and the overall normal examination findings in the record.  See T. at 20.  In 2016, Dr. Shapiro opined that plaintiff had no limitations in understanding and following simple instructions, performing simple or complex tasks, maintaining attention and concentration, and attending to a routine and schedule.  See id. at 416.  By contrast, in 2019, Ms. Sullivan determined that plaintiff would be "[u]nable to meet competitive standards" in maintaining regular attendance and being punctual, sustaining an ordinary routine, completing a normal workday without interruption, and dealing with normal work stress.  Id. at 480.  Ms. Sullivan also provided that plaintiff had "[t]houghts of suicide/harming others."  Id. at 479.

14

Plaintiff argues that "even though [Ms. Sullivan's] opinion was rendered early in the treating relationship, because it was rendered in June 2019, it was also a far more recent opinion than that of consultative examiner Dr. Shapiro's opinion in September 2016, to whom the ALJ afforded 'some weight.'" Dkt. No. 17 at 12. "The fact that Ms. Sullivan noted more severe limitations over two years after Dr. Shapiro['s] examination indicates [p]laintiff's condition had deteriorated since that time." Id. Plaintiff also contends that (1) Dr. Hill explained that plaintiff had extreme anxiety and depression, a distorted reality, poor judgment, and restricted affect and mood; (2) PA Pitzer noted that plaintiff heard voices; and (3) "Dr. Commisso noted [that] she is unsure if [p]laintiff is fit for the work force"—corroborating Ms. Sullivan's opinions. Id. at 15; 14 (citing T. at 342, 344-45, 583, 593). The Commissioner contends that the Court should reject plaintiff's argument because it is asking the Court to reweigh the evidence. See Dkt. No. 20 at 12. Regardless, the Commissioner argues that Dr. Hill's opinion does not support plaintiff's argument because it was given before plaintiff's alleged onset date and does not contain specific mental examination findings. See id. The Commissioner asserts that the ALJ appropriately acknowledged plaintiff's complaints of hearing voices. See id. at 13 (citing T. at 19). Next, the Commissioner explains that Dr. Commisso's statement regarding plaintiff's ability to function in the work force is entitled to no weight as it is a decision for the Commissioner. See id. at 14.[6]

This Court will not reweigh the evidence that was before the ALJ. See April B., 2019 WL 4736243, at *6. Although Dr. Shapiro's opinion was three years old at the time of the ALJ's decision, the ALJ was entitled to afford the opinion more weight as

---

[6] The Commissioner correctly notes that plaintiff does not challenge the ALJ's evaluation of Dr. Commisso's statement. See Dkt. No. 20 at 14.

long as it was supported by substantial evidence.  See Frawley, 2014 WL 6810661, at *9; see T. at 413.  As the ALJ noted, Dr. Shapiro's findings are "consistent with the grossly normal findings on objective examination elsewhere in the record[.]"  T. at 20. The record reflects that plaintiff's examinations were normal throughout her treatment history.  See id. at 390, 393, 574, 581, 584, 587, 590, 594, 596, 598.  Plaintiff was diagnosed with anxiety, depression, and bipolar disorder, and consistently showed signs of anxious feelings, worried thoughts, and preoccupations.  See id. at 339, 345, 514-19, 602.  However, throughout the record her mood and affect were normal; she did not show signs of suicidal ideation; she was alert, oriented, and well groomed; she arrived on time for her appointments; and her attention span and concentration were intact.  See id. at 390, 393, 574, 581, 584, 587, 590, 594, 596, 598, 602; see also Alpeter, 2017 WL 4443978, at *5 ("Substantial evidence supports the ALJ's finding that the evidence did not substantiate the level of restrictions [the plaintiff's social worker therapist] opined[]" where, "although [the] treatment notes indicate [the] [p]laintiff's variously reported symptoms of depressed mood, low self-esteem, feelings of helplessness, anxious feelings, fear, worry thoughts, negative self-reliance, and preoccupations, they do not contain objective mental status examinations.").

Plaintiff correctly notes that Dr. Hill's records reflect that "[p]laintiff continued to display symptoms of anxiety and depression through October 2016."  Dkt. No. 17 at 15; see, e.g., T. at 390, 391, 393, 395-99, 401-405.  These records show that plaintiff had a depressed mood, worried thoughts, and anxious feelings; was impulsive; had self-esteem issues; and struggled with interpersonal conflict and in social environments. See T. at 397-99, 401-406.  However, as the ALJ correctly explained, these "records do

not contain any specific mental status examination findings," T. at 18, and although they corroborate plaintiff's diagnoses and lesser symptoms, they do not support Ms. Sullivan's more extreme limitations.  See Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir.2013) (summary order) ("[W]hether there is substantial evidence supporting the [claimant]'s view is not the question"; instead, the court must "decide whether substantial evidence supports the ALJ's decision.").  Moreover, the ALJ acknowledged PA Pitzer's treatment record wherein plaintiff reported she was hearing voices, and Dr. Commisso's opinion that plaintiff may not be fit to return to work.  See T. at 19-20. However, the ALJ choose to discount these opinions because of the normal objective findings in the record, and because Dr. Commisso's statement "is of little probative value."  Id. at 20; 19.  The objective medical record provides substantial evidence for the ALJ's determination that plaintiff had only moderate functional limitations and that greater limitations were unsubstantiated by the record.  See Jennifer Lee W., 2019 WL 1243759, at *6 (explaining that the ALJ recited the same evidence that the plaintiff highlighted argument and the ALJ's choice to credit certain opinions over others did not require reversal).

Insofar as plaintiff takes issue with the ALJ's focus on Ms. Sullivan's medical source statement being written two weeks after the treatment relationship began, the Court concludes that her consideration of this factor does not amount to reversible error. See Dkt. No. 17 at 12.  In her medical source statement from June 21, 2019, Ms. Sullivan acknowledged that she "has only known [plaintiff] since 6/6/19[.]"  T. at 482. "Under the Regulations an ALJ is permitted to take into account the frequency, length, nature and extent of treatment."  Dusharm v. Comm'r of Soc. Sec., No. 7:14-CV-1562

(GTS/WBC), 2016 WL 11478213, at *5 (N.D.N.Y. Mar. 3, 2016), report and recommendation adopted sub nom., 2016 WL 1271490 (N.D.N.Y. Mar. 31, 2016); see Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) ("We note that '[g]enerally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion[.]'") (alterations in original) (quoting 20 C.F.R. § 404.1527(d)(2)(i)).  Therefore, it was not improper for the ALJ to discount Ms. Sullivan's opinion, in part, because of the short duration of the treatment relationship.  See Tomczak, 2019 WL 2059679, at *2 (explaining that "the ALJ properly considered another factor—the length, nature, and extent of the treatment relationship—when he assigned [the] opinion little weight[,]" because "[a] treatment relationship [consisting of only two treatment episodes] [was] insufficient to provide [the physician] with a complete view of [the] [p]laintiff[.]").

Insofar as plaintiff argues that the ALJ erred in rejecting Ms. Sullivan's opinion for relying on plaintiff's subjective complaints, the Court concludes that the ALJ's consideration is proper.  See Dkt. No. 17 at 12.  The ALJ explained that Ms. Sullivan's "extreme limitations" are based "entirely on the claimant's own subjective testimony[,]" T. at 20, and Ms. Sullivan admitted in her medical source statement that "[plaintiff] self reports these struggles[.]"  See id. at 482.  Plaintiff is correct that it is appropriate for mental health professionals to rely on a patient's subjective complaints, but as the Commissioner asserts, those complaints must be consistent with objective evidence.  See Gorman v. Comm'r of Soc. Sec., No. 5:12-CV-0939 (LEK/ATB), 2013 WL 4049978, at *4 (N.D.N.Y. Aug. 9, 2013) ("*Green-Younger* stands for the proposition that a treating

physician's opinion that is <u>adequately</u> <u>supported</u> <u>by</u> <u>medical</u> <u>evidence</u> is not undermined because the opinion also relies on the claimant's subjective complaints.") (emphasis added) (citing <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 107) (2d Cir. 2003)); <u>compare</u> <u>Ricottelli v. Saul</u>, No. 3:18-CV-01314 (SALM), 2019 WL 11276514, at *12 (D. Conn. Sept. 26, 2019) (determining that "[t]he ALJ erred in devaluing the opinions of [the] plaintiff's treating physicians because they relied on [the] plaintiff's subjective complaints, particularly where there are no records indicating that the physicians believed plaintiff was being untruthful, or that her symptoms were inconsistent with how plaintiff presented in her clinical sessions."), <u>with</u> <u>Tomczak</u>, 2019 WL 2059679, at *1 (explaining that the ALJ "can reject the opinion if he previously found the claimant's subjective complaints unsound and the medical source relied on those complaints when reaching his opinion.").

As the Commissioner notes, the ALJ did not discount Ms. Sullivan's opinion solely because it was based on plaintiff's subjective complaints, but because it was inconsistent with her own clinical findings and other record evidence.  <u>See</u> Dkt. No. 20 at 11; T. at 20; <u>compare</u> <u>Showers</u>, 2015 WL 1383819, at *7-8, <u>with</u> <u>Clasen v. Colvin</u>, No. 3:13-CV-1390 (GLS/ESH), 2015 WL 1312548, at *3 (N.D.N.Y. Mar. 24, 2015) (explaining that it is "appropriate for the ALJ to consider the consistency of the treating sources' opinion and [the plaintiff's] subjective complaints with the record as a whole."). As explained above, the objective evidence showed that plaintiff's mental health examinations were routinely normal; therefore, Ms. Sullivan's more extreme limitations are not supported by the record.  <u>See</u> T. at 20; <u>see</u> <u>Saxon</u>, 781 F. Supp. 2d at 102 ("The

less consistent an opinion is with the record as a whole, the less weight it is to be given.")

As to the gap in plaintiff's treatment record, she asserts that "Ms. Sullivan's opinion clearly shows [p]laintiff has significant psychological difficulties, therefore she may have lacked the appropriate rationality to have chosen to continue her treatment." Dkt. No. 17 at 15.  The Commissioner argues that the ALJ appropriately considered "[p]laintiff's failure to avail herself of mental health treatment for over a two-year period, within the context of the ALJ's evaluation of Ms. Sullivan's medical source statement" and "within the context of 'other normal examination evidence in the record, including [plaintiff's] consultative examination[.]'"  Dkt. No. 20 at 16-17 (quoting T. at 20)

The ALJ noted that plaintiff was not receiving mental health treatment for "more than two years" from April 2017 to June 2019.  T. at 19; see id. at 574, 601.  On April 20, 2017, plaintiff presented to Tricia Eveleigh, NP, for "increased anxiety.  She witnessed her boyfriend try to commit suicide on Friday. . . . She is traumatized."  Id. at 574.  During that visit, plaintiff denied suicidal thoughts, was cooperative, alert, oriented; had no apparent anxiety, depression, agitation, delusions, hallucinations, or obsessions; and was dressed appropriately.  See id.  On June 6, 2019, plaintiff "arrived for her initial assessment [with Ms. Sullivan] to inquire about if her diagnosis of Bipolar is in fact accurate."  Id. at 601.  During the visit, plaintiff was cooperative with a normal mood and affect; her attention span and concentration were normal, and she had no suicidal ideation.  See id.  The ALJ twice referenced this treatment gap: once in the context of finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

20

other evidence in the record"; and next in affording Ms. Sullivan's opinion limited weight. T. at 17; 19-20; see Jackson v. Berryhill, No. 17-CV-6268 (FPG), 2018 WL 3306193, at *5 (W.D.N.Y. July 5, 2018) ("When the ALJ finds the claimant's allegations not credible, he is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints.").

Plaintiff cites Cooper v. Saul, 444 F. Supp. 3d 565, 580 (S.D.N.Y. 2020), to support the contention that "Ms. Sullivan's opinion clearly shows Plaintiff has significant psychological difficulties, therefore she may have lacked the appropriate rationality to have chosen to continue her treatment." Dkt. No. 17 at 15. In Cooper, the court explained that SSR 16-3p requires an ALJ to consider a plaintiff's reasoning for significant gaps in treatment prior to drawing any negative inferences related to the plaintiff's subjective allegations of pain and intensity from his or her symptoms. See Cooper, 444 F. Supp. 3d at 580; Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016); see also Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) ("[F]aulting a person with diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'") (citation omitted). However, as the Commissioner correctly notes, the ALJ's determination as to plaintiff's statements of intensity, persistence, and limiting effect of her symptoms is not at issue. See Dkt. No. 20 at 16.[7] Rather, the ALJ explained that Ms. Sullivan's "extreme limitations" are inconsistent with plaintiff's "large gap in treatment records." T. at 20. There are no records of plaintiff seeking mental

---

[7] Plaintiff does not challenge the ALJ's determination as it relates to the consistency of her allegations. See Dkt. No. 17 at 15-16; see Snyder v. Colvin, No. 1:16-CV-0046 (LEK), 2017 WL 61946, at *6, n.1 (N.D.N.Y. Jan. 5, 2017) ("Because [the plaintiff] failed to raise this claim in her brief, . . . the Court deems the issue waived[.]").

health treatment during the two-year period nor does plaintiff contend that such treatment records exist; therefore, the record lacks evidence that plaintiff had "extreme" mental health limitations during that period.  Id.; see Dawn P. v. Berryhill, No. 6:17-CV-1265 (DJS), 2019 WL 1024279, at *6 (N.D.N.Y. Mar. 4, 2019) (internal quotation marks and citation omitted) (An ALJ "is entitled to rely not only on what the record says, but also on what it does not say.").

In sum, "even excluding consideration of the level of treatment[,]" Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012), the ALJ's decision is supported by substantial evidence because the ALJ was not required to give Ms. Sullivan's opinion controlling weight under the treating physician rule; the record does not reflect objective mental examination findings corroborating extreme limitations; and the ALJ appropriately noted that the opinion relied primarily on plaintiff's subjective allegations. See Alpeter, 2017 WL 4443978, at *5; Saxon, 781 F. Supp. 2d at 104.  As the Court can glean the ALJ's rationale in discounting Ms. Sullivan's opinion and limiting plaintiff to simple, routine work with only occasional interaction with others, remand is not warranted.  See April B., 2019 WL 4736243, at *5-6.

Plaintiff's final argument is that she would be precluded from work had Ms. Sullivan's limitations been given greater weight, based on the vocational expert's testimony.  See Dkt. No. 17 at 16-17; T. at 55-56.  "At step five, the burden shifts to the Commissioner to show there is other work that [the claimant] can perform."  Kristen B. v. Comm'r of Soc. Sec., No. 5:20-CV-0032 (ML), 2021 WL 950509, at *13 (N.D.N.Y. Mar. 12, 2021) (citations and internal quotation marks omitted) (alterations in original).  "If a claimant has non[-]exertional limitations that 'significantly limit the range of work

22

permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (citations omitted). "The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the [p]laintiff's limitations." Kristen B., 2021 WL 950509, at *13. Because the Court finds that the ALJ's RFC is supported by substantial evidence as she did not err in rejecting Ms. Sullivan's extreme limitations, and the ALJ presented a hypothetical to the VE based on this RFC,  it also finds that the ALJ's step-five determination, and the ultimate disability determination, were similarly supported by substantial evidence.  See Nikki L. v. Saul, No. 3:20-CV-934 (ATB), 2021 WL 4066530, at *9 (N.D.N.Y. Sept. 7, 2021); see T. at 53-55.


## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 18, 2022

23

Albany, New York

Christian F. Hummel
U.S. Magistrate Judge